# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DEREK ANTHONY COSTANTINO,

 *Petitioner*,

vs.

TIMOTHY FILSON, *et al.*,

 *Respondents*.

3:15-cv-00570-RCJ-VPC

ORDER

 This habeas matter under 28 U.S.C. § 2254 comes before the Court for a final decision on the merits.

## *Background*

 Petitioner Derek Costantino challenges the manner in which state authorities have calculated and applied his sentences.

 Costantino was convicted in No. C120552 in the state district court on August 27, 1996, pursuant to a guilty plea, of a second-degree murder with the use of a deadly weapon committed on February 27, 1994. He was sentenced to 25 years plus an additional consecutive 25 years for use of a deadly weapon.[1] (ECF No. 1, at 5-9.)

 At the relevant time, N.R.S. 193.165 provided in pertinent part that "any person who uses a firearm or other deadly weapon . . . in the commission of a crime shall be punished by

---

[1] ECF No. 1, at 5-9.

imprisonment . . . for a term equal to and in addition to the term of imprisonment prescribed by statue for the crime" with the sentence for the enhancement running "consecutively with the sentence prescribed by statute for the crime." N.R.S. 193.165(1), as amended through 1991 Laws, ch. 403, § 6, at 1059. The statute further provided that "[t]his section does not create any separate offense but provides an additional penalty for the primary offense, whose imposition is contingent upon the finding of the prescribed fact." N.R.S. 193.165(2), as similarly amended.

On March 1, 2011, Costantino was granted an institutional parole.

On September 29, 2014, Costantino filed a state post-conviction petition challenging the application and calculation of his sentences.

In an October 19, 2015, order of affirmance, the state appellate court rejected the claims that it construed to be presented to that court on the following grounds:

> In his September 29, 2014, petition appellant Derek Anthony Costantino claimed the Nevada Department of Corrections (NDOC) improperly calculated his sentence. Costantino was convicted of second-degree murder with the use of a deadly weapon. The district court sentenced Costantino to serve a term of 25 years for the primary offense and a consecutive term of 25 years for the deadly weapon enhancement. Costantino received an institutional parole for the primary offense and began serving the term for the deadly weapon enhancement.
>
> First, Costantino claimed due to the institutional parole, his enhancement term combined with his primary term to form concurrent sentences and he should have been released upon expiration of the primary term. Costantino also asserted his primary sentence and his deadly-weapon-enhancement sentence should be treated as one for purposes of earning and applying good-time credits. Costantino's claims lacked merit. The Nevada Supreme Court has already stated "the penalty for a primary offense and the enhancement penalty imposed pursuant to NRS 193.165 are separate and distinct, and the consecutive sentences imposed must be treated as separate sentences for all purposes." *Nevada Dep't of Prisons v. Bowen*, 103 Nev. 477, 481, 745 P.2d 697, 699 (1987). Accordingly, the NDOC has properly treated Costantino's primary and enhancement terms as separate sentences for all purposes. Therefore, the district court did not err in denying these claims.
>
> Second, Costantino claimed serving the enhancement sentence separate from the primary sentence violated his right

-2-

> against double jeopardy. Costantino's claim lacked merit. The deadly weapon enhancement constitutes an additional penalty for the primary offense and imposition of the enhancement does not violate the double jeopardy clause. *See Woofter v. O'Donnell*, 91 Nev. 756, 761–62, 542 P.2d 1396, 1399–1400 (1975); *see also Bowen*, 103 Nev. at 479, 745 P.2d at 698 (explaining there is "no conflict between the penalty imposed by NRS 193.165 and the double jeopardy clause of the United States Constitution."). Therefore, the district court did not err in denying this claim.

(ECF No. 7-11; Exhibit 10.)

In the sole ground presented in the federal petition, Costantino alleges that he has been subjected to double jeopardy and denied due process of law in violation of the Fifth and Fourteenth Amendments. He asserts, *inter alia*, that the state appellate court decision was "'silent' on petitioner's raised factual issue of the 'inherent modification' of the enhancement from consecutive to 'concurrently' ran with the 'institutionally paroled primary offense' as an Executive Parole Power act under NRS 213.120 once petitioner was required to sign a Consecutive/Concurrent Parole Reporting and Institutional Parole Agreement Packet on 3-4-11." (ECF No. 4, at 4.) He maintains that allowing "the Institutional Paroled criminal offense to expire . . . now leaves petitioner restrained in custody on a non-criminal statute that by law is a non-punishable statute 'on its own,' thus the events . . . have now turned a non-criminal-non-convictable-non-punishable statute by it's self [sic] into a criminal act and punishable, where it is these chain of events in schemes that triggers a double jeopardy and due process violations." (*Id.*, at 4-5.) He continues that the sentences began to run concurrently on March 2, 2011 "under the practical effect concept." (*Id.*, at 6-7.) Petitioner contends that notwithstanding the Nevada state supreme court's 1987 *Bowen* decision, "the treatment schemes actually remained the same and [were] carried out the same . . . as under" the earlier decision in *Biffath v. Warden*, 95 Nev. 260, 593 P.2d 51 (1979). (*Id.*, at 11.) He maintains that this alleged circumstance created "a contradictive interpretation of law carried out in a manner detrimental to petitioner, [i]n that he believed he had fully expired his conviction as an inherently modified concurrently served sentence." (*Id.*) Petitioner seeks release from all custody under the enhancement sentence, including from any parole. (*Id.*, at 10.)

Subsequent to the filing of the federal reply, petitioner has been paroled on the

enhancement sentence into free society; and he currently remains on parole.[2]

### *Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that a decision was incorrect. 131 S.Ct. at 1411. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court based on the record presented to the state courts; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 563 U.S. at 181-86.

A state court decision on the merits is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). A decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established

---

[2]Given the arguments made and the relief requested, petitioner's release on parole does not moot the petition. Timeliness of the petition has not been specifically challenged herein.

-4-

federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference to the state court's determination:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Pinholster*, 563 U.S. at 181.

## *Discussion*

Costantino has not demonstrated that the state appellate courts' rejection of his claim was contrary to or an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court.

At the outset, the Nevada state appellate courts' determination that petitioner's institutional parole did not render his consecutive sentences concurrent under Nevada state law is unassailable in these proceedings. The Nevada state appellate courts are the final arbiters of Nevada state law. *See, e.g., Rudin v. Myles*, 781 F.3d 1043, 1054 (9th Cir. 2015). In *Bowen*, the state supreme court overruled the *Biffath* precedent upon which Costantino

1 relies, seven years before the murder that he committed. There is no "contradictive
2 interpretation of law" between *Bowen* and *Biffath* that is cognizable in a federal habeas
3 proceeding. Rather, the state supreme court's holding in *Bowen* overruling *Biffath* simply is
4 the end of the matter with regard to the Nevada law in force at the relevant time. Under that
5 governing law, petitioner's enhancement sentence ran consecutive to, not concurrent with, the
6 second-degree murder sentence. *Bowen*, 103 Nev. at 481, 745 P.2d at 699.

Nothing in the purported institutional parole agreement upon which petitioner relies states that his consecutive sentences had been converted to concurrent sentences, in contravention of both the judgment of conviction and the governing statutory law and jurisprudence.[3] The "Concurrent/Consecutive Parole Reporting Instructions" title on the separate cover letter did not reflect one way or the other the nature of petitioner's underlying sentences. The clear provisions of the judgment of conviction instead already established that his sentences were consecutive, not concurrent.

Costantino's core contentions further are fundamentally flawed.

First, petitioner urges that, notwithstanding *Bowen*, state authorities after the parole initially calculated the sentence credits on the sentences under *Biffath*.[4] He maintains that this alleged – and undocumented – initial treatment of the sentences under *Biffath* created an expectation that the weapon enhancement sentence would expire at the same time as the

---

[3]See ECF No. 7-3, at 11-13. The fourth page included in petitioner's exhibit (ECF No. 7-3, at 14) is *not* part of the purported March 2011 institutional parole agreement but instead is a partial sentence credit history printout report from three years later on April 24, 2014. (ECF No. 7-3, at 10.) Petitioner relies upon the sentence credit printout to show that, three years after the institutional parole, state authorities were *not* following his theory as to the consequences of the institutional parole. See ECF No. 8, at 2, lines 19-28. Petitioner presented no contemporaneous documentation to the state courts – *i.e.,* generated actually at the time of the March 1, 2011 institutional parole action – that created any expectation, much less an objectively reasonable expectation, that the institutional parole somehow had turned the consecutive sentences into concurrent sentences. The state courts' rejection of Costantino's claim that his weapon enhancement sentence was calculated erroneously under Nevada state law on the record presented to the state courts is conclusive as to that state law issue on federal habeas review. Petitioner further has not overcome the deference owed to any associated implicit factual findings under 28 U.S.C. § 2254(d)(2) and (e)(1) with regard to any of his federal claims premised upon the state courts' application of state law to that record.

[4]Petitioner, again, presented the state courts with no contemporaneous documentation – generated prior to April 24, 2014 – that this in fact occurred between March 2, 2011, and April 12, 2014.

1 sentence on the primary offense. That simply could not happen even if *Biffath arguendo* had
2 been applied in error to the sentences for the first three years following the institutional parole.
3 *Biffath* instead would have treated the two consecutive 25-year sentences as one long 50-year
4 sentence with an ultimate expiration date corresponding to the otherwise expiration date of
5 the *second* consecutive sentence, *not* the first. See *Biffath*, 95 Nev. at 262-63, 593 P.2d at
6 52-53.[5] There is no way that an alleged application of *Biffath* instead of *Bowen* could have
7 led to any expectation, reasonable or otherwise, that both sentences would have expired at
8 the time that the first sentence expired. Costantino's argument – that he had a reasonable
9 expectation of an earlier expiration date on the weapon enhancement sentence based upon
10 an alleged application of *Bifaath* – thus is grounded in an inherent *non sequitur*.

11 Second, petitioner's further argument that he has been serving a sentence for a
12 "non-crime" after the expiration of the first sentence is meritless. N.R.S. 193.165 clearly
13 authorizes imposition of the weapon enhancement sentence as a consecutive sentence.

14 Petitioner's flawed subjective beliefs about his sentences and the effect of an
15 institutional parole do not give rise to either a material factual issue or a viable claim.

16 Furthest to the point, petitioner cites no apposite Supreme Court precedent establishing
17 that the state courts' rejection of his due process and double jeopardy claims was either
18 contrary to or an objectively unreasonable application of clearly established federal law as

---

[5] At the time of *Biffath* and similar cases, the distinction between two consecutive sentences and one long sentence made a difference in practical terms because N.R.S. 209.443 provided for more accrual of good time credit the more time that had run on the inmate's current sentence. Accordingly, an inmate would accrue more sentencing credit if, for example, he was 10 years into one long sentence rather than instead being only 2 years into a second sentence following an institutional parole. See *Biffath*, 95 Nev. at 262 n.2, 593 P.2d at 52 n.2. Under the law applicable instead to offenders such as Costantino sentenced for a crime committed on or after July 1, 1985, but before July 17, 1997, there is no such increasing credit as the inmate gets deeper into a sentence. See N.R.S. 209.446, as amended through 1997 Laws, ch. 641, § 10. Any *arguendo* combining of the two consecutive sentences into instead one long sentence thus would have not changed the rate at which sentence credits were accrued. In all events, combining two consecutive terms into one long sentence under *Bifaath* would not have resulted, under any of the applicable statutory schemes, in two consecutive 25-year sentences both fully expiring at the same time that the first 25-year sentence otherwise would expire. *Bifaath* combined two consecutive sentences into one long sentence equal in length to the two combined sentences. *Bifaath* did not inherently convert two consecutive equal length sentences into concurrent sentences both expiring, with credits, at only one sentence length rather than two. There is no way that Costantino could have expired the 25-year enhancement sentence in three years or less, as he maintains, following the March 1, 2011, institutional parole.

determined by that Court. Petitioner urges that the double jeopardy holding in *Missouri v. Hunter*, 459 U.S. 359 (1983), relied upon in *Bowen* is not pertinent to his case. Even if that were true, which it is not,[6] Costantino misapprehends his burden under AEDPA. It is petitioner's burden to come forward with apposite Supreme Court precedent that the state court decision either contradicted or unreasonably applied. He has not done so in this case.[7]

The petition therefore will be dismissed with prejudice on the merits.

IT THEREFORE IS ORDERED that the petition is DENIED on the merits and that this action shall be DISMISSED with prejudice.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED, as jurists of reason would not find the district court's dismissal of the petition on the merits to be debatable or wrong. Petitioner's claim that an institutional parole from one consecutive sentence to the next inherently rendered the sentences to instead be concurrent is, at best, frivolous.

The Clerk of Court shall enter final judgment accordingly in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED: This 23rd day of May, 2018.

_____
ROBERT C. JONES
United States District Judge

---

[6] *Missouri v. Hunter* confirms that the Double Jeopardy Clause is not violated where the legislature has authorized multiple, or cumulative, punishments. 459 U.S. at 366. The Nevada state legislature clearly authorized consecutive sentences in this context in N.R.S. 193.165.

[7] Nothing in *United States v. Daugherty,* 269 U.S. 360 (1926), supports petitioner's claim. Petitioner contends that "federal law" under *Daugherty* requires a consecutive sentence to begin once the primary offense has been discharged rather than once a parole has been granted on the primary sentence. (ECF No. 8, at 3.) While it is unclear how such a holding would aid Costantino, *Daugherty* made no such holding in the first instance; and *Daugherty,* which arose from a federal criminal appeal, made no federal constitutional holding applicable to the states. Nothing in *Daugherty* dictates how the Nevada courts must apply Nevada state law regarding the execution of sentences.

The remaining Supreme Court decisions cited by petitioner in his reply are even further afield from the present case and do not warrant extended discussion.